OPINION OF THE COURT
John G. Connor, J.
Petitioners seek a judgment pursuant to CPLR article 78 (1) vacating and annulling the certificate of transition assessments *684 issued by respondent on the grounds that the same was arbitrary, capricious, an abuse of discretion and contrary to law, and (2) directing respondent to recalculate and establish transition assessments, commencing in the year 1992, based upon the assessed value of the Shoreham plant as was set forth on the 1991 tax roll for the Town of Brookhaven as of February 29, 1992, or in the alternative, (3) directing respondent to recalculate and establish transition assessments, commencing in the year 1992 and continuing thereafter, based upon an assessed value for the Shoreham nuclear plant without accounting for the value-depressing acts of government in opposing and acquiring the Shoreham plant. Respondent’s answer raises an objection in point of law that the petition fails to state a cause of action.
A transition assessment is a mechanism designed by the State Legislature to lessen the burden placed upon taxing entities by the acquisition of private lands by the State of New York. Real Property Tax Law § 545 governs the granting of transition assessments and provides in pertinent part: “1. Whenever the state or an agency of the state acquires real property which becomes exempt as a result of such acquisition and which constitutes two per cent or more of the total taxable assessed valuation of the latest preceding assessment roll or there is a reduction in assessments on taxable state lands, the state board shall establish a ‘transition assessment’ which will in effect prevent any loss of taxable assessed valuation on the assessment roll for the first year affected by such occurrence or occurrences. For each succeeding year, the state board shall establish a transition assessment which will in effect limit to two per cent of the total taxable assessed valuation on the latest preceding assessment roll the loss in taxable assessed valuation on such roll as a result of such occurrence or occurrences, and (i) further acquisitions by the state or an agency of the state, or (ii) further reductions in assessments on taxable state lands, or (iii) both (i) and (ii).” The statute further provides that respondent shall calculate the transition assessment by making computations and determinations according to section 545 and by taking into account “increases or decreases in level of assessment on the assessment rolls involved.” (See, RPTL 545 [3] [b].) In addition, any transition assessment established must be reduced by any payment in lieu of taxes (PILOT) paid to petitioners pursuant to Public Authorities Law § 1020-q. (See, RPTL 545 [6] [a].)
The issue raised by the instant proceeding is whether the transition assessment should be based upon the assessment *685 originally established by the Town or whether the transition assessment should be based upon the assessment as reduced after a RPTL article 7 proceeding. Petitioners are three of five entities that received tax benefits from the Shoreham nuclear plant; the others are the North Shore Public Library District (the Library District) and the Town of Brookhaven (the Town). The Library District has commenced a separate article 78 proceeding before this court challenging the transition assessment. The Long Island Lighting Company (LILCO) was the private owner of the Shoreham plant until it was acquired by the Long Island Power Authority (hereinafter the State) on February 29, 1992. At that time the Shoreham plant was nonoperational and the State’s acquisition rendered that condition permanent.
Prior to the State’s acquisition, LILCO commenced eight consolidated tax certiorari proceedings for the tax years 1984-1985 through 1991-1992. (See, Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, Sup Ct, Suffolk County, index No. 84-1853, affd 246 AD2d 156 [2d Dept 1998].) The 1991-1992 tentative assessment for the Shoreham nuclear plant parcel, comprising both improvements and land, was reduced from $156,579,980 to $452,745 as a result of said article 7 proceeding. (See, Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra.) The Court assigned no value to the nuclear plant, based upon the fact that it would never be operational, and a value of $3,400,000 to 113.7 acres of land. However, LILCO only transferred a 10.5-acre parcel of land to the State with the nuclear plant and LILCO retaining the other 103.2 acres.
Respondent obtained information from the Town of Brookhaven in order to determine the allocation of the $3,400,000 land value between the property acquired by the State and the property retained by LILCO. Respondent determined that of the five entities seeking transition assessments, only the Town and County were not entitled to any in 1992, because they did not meet the 2% threshold requirement. Respondent further determined the transition assessment for 1992 for the School District, Fire District and Library District to be $45,120; the School District received transition aid of $9,932 and the Fire District received transition aid in the amount of $249. Respondent further certified that there would be no transition assessments for subsequent years unless the determination of the court in the tax certiorari case is reversed or modified.
It is within said context that petitioners challenge respondent’s denial of a transition assessment for the 1992 tax year. *686 Petitioners argue that the 1992 transition assessment for the nuclear plant should, be $65,143,058. The petitioners contend that the respondent should have calculated the transition assessment by taking the reproduction cost of a new facility, less physical depreciation, and should not have considered the “value-depressing actions of the State” in opposing and acquiring the plant. What petitioners fail to account for is the economic and functional obsolescence of the nuclear plant before the State’s acquisition. The Court determined that the calculation of reproduction cost new, less physical depreciation, must include a factor for the probability that the nuclear plant would ever be opened for commercial operation. Recognizing that the nuclear plant could never be operated commercially, the Court held, inter alia, that the value of the nuclear plant at the time of the State’s acquisition was $0. (See, Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven, supra.)
In Matter of Town of Brookhaven v New York State Bd. of Equalization & Assessment (88 NY2d 354, 362 [1996]), the Court of Appeals held that, pursuant to RPTL 545, transition assessments are payable on account of the State acquisition of the Shoreham nuclear plant; the Court remanded the matter to the Supreme Court with directions to remand to the respondent for a determination of “what effect, if any, judicial reductions in the assessed valuation of Shoreham will have on entitlement to transition assessments and the amounts thereof.” Furthermore, in Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist. (195 AD2d 140, 142 [2d Dept 1994]), the Court held, inter alia, that PILOTS should be based on the assessment of the Shoreham nuclear plant as reduced in the RPTL article 7 proceeding. The Court of Appeals affirmed the Second Department’s holding that PILOTS should reflect the reduced assessments as determined in the article 7 proceeding to prevent taxing districts from realizing a windfall caused by their overassessment. (See, Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist., 88 NY2d 503 [1996].)
Likewise, to allow petitioners’ transition assessments to be based on the erroneous assessment of the taxing authorities would result in a windfall to petitioners and be contrary to the intention of the State Legislature, to compensate taxing entities for taxes lost as a result of the State’s acquisition of private property. At the time of the State’s acquisition of the Shore-ham plant the value of the plant was $0, and any transition assessments paid would later have to be adjusted, and refunds *687 paid, to reflect the correct assessment for the Shoreham plant in the 1991-1992 tax year. Otherwise, the taxing entities would be rewarded for imposing excessive tax assessments on properties before their acquisition by the State.
Accordingly, the instant article 78 proceeding is dismissed on the merits without costs.